STANLEY S. KOGUT and KATHLEEN KOGUT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kogut v. Commissioner
Docket No. 8629-86
United States Tax Court
T.C. Memo 1992-226; 1992 Tax Ct. Memo LEXIS 266; 63 T.C.M. (CCH) 2781; T.C.M. (RIA) 92226; April 16, 1992, Filed *266 Decision will be entered under Rule 155. Mark D. Pastor, for petitioner Stanley S. Kogut. Gordon B. Cutler, for petitioner Kathleen Kogut. James W. Ruger, for respondent. DAWSON
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge John J. Pajak pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. All section references are to the Internal Revenue Code for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in and additions to petitioners' Federal income tax as follows: Additions To Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651
6653
6653
6659
(a)(1)
(a)(1)
(a)(2)
1981
$ 53,627
$ 888.45
$ 3,555.20
[1]
$ 4,233.90
*267 Respondent also determined that petitioners are liable for increased interest under section 6621(c) (formerly 6621(d)). After concessions, the only remaining issue is whether petitioner Kathleen Kogut qualifies as an innocent spouse under section 6013(e). [1]
For convenience and clarity, we have combined our findings of fact and opinion. Some of the facts have been stipulated and are so found. Kathleen Kogut (petitioner) and Dr. Stanley S. Kogut (Dr. Kogut) filed a 1981 joint Federal income tax return. When the petition in this case was filed, petitioner resided in Van Nuys, California, and Dr. Kogut resided in Marina Del Ray, California. Petitioner graduated from Hunter College in 1945 with a bachelor of arts *268 degree in economics and psychology. On December 25, 1945, petitioner married Dr. Kogut, and they had three children during their marriage. From 1945 through 1951, petitioner was employed by Revlon Corp. in its credit adjustment department, and her husband completed his medical education and training. In 1954, they moved to California where Dr. Kogut began to practice medicine as an internist. Petitioner filed for dissolution of their marriage in the Los Angeles County Superior Court on December 29, 1980; a final judgment of marriage dissolution was entered on August 24, 1982, and the Further Judgment on Bifurcated Issues (their marital settlement) was entered on January 25, 1983. During 1979 and the first half of 1980, petitioner worked at home for her husband's professional corporation. Her duties included, but were not limited to, drawing company checks for payroll and employment taxes. Approximately in June 1980, petitioner stopped working for her husband when marital problems arose. Throughout their marriage, Dr. Kogut deposited his checks into a joint checking account with petitioner. All family expenses were then paid by petitioner from that account. Dr. Kogut normally *269 did not review the expenditures made by petitioner. Petitioner, however, would discuss major purchases with her husband before making such acquisitions. As of 1981, petitioner and Dr. Kogut owned an interest in the following ventures: Cozycroft Investment Group, Northwest Industrial Center, Sepulveda II Investment Group, Northwest Industrial Center, Sepulveda II Investment Group, Camarillo II Investment Group, Walton Investment Group, Tarzana Medical Plaza Hospital, Ltd., Gerald Gottieb & Associates, Rich Energy Fund, Ltd., and Battery Cycle Heating Systems (Battery Cycle). The 1981 deficiency is attributable in part to petitioners' involvement in the Electric Auto program in which Dr. Kogut "invested". Dr. Kogut deposited the 1981 refund check from the Internal Revenue Service in his Shearson account. Petitioner sent a letter, dated shortly after the marital settlement, to the accountant who prepared the 1981 return. In that letter, petitioner referred to the refund check and stated that this money, less interest, was part of her settlement. Petitioner has paid one-half of the deficiency in income tax for 1981. In 1979, petitioner first learned of the term "tax shelter". *270 She understood it to mean an investment that was risky in its chance to succeed, and therefore was made in order to achieve tax savings. She further understood that the ratio of money invested, in return for the tax benefits received, favored the taxpayer. After Dr. Kogut informed petitioner about the Battery Cycle tax shelter in 1979, but before she agreed to participate, petitioner sought the advice of her attorney, Albert Berg. Although Mr. Berg advised petitioner not to make such investment, she proceeded to do so with her husband. They made numerous investments over the years. Pursuant to the January 25, 1983, marital property settlement, petitioner received property which included: (a) Cash of $ 128,806; (b) a note secured by a deed of trust with a fair market value of $ 247,000; (c) one-half of the parties' interest in the following ventures: (1) Camarillo II Investment Group, (2) Northwest Industrial Center, (3) Cozycroft Investment Group, (4) Sepulveda II Investment Group, (5) Gerald Gottieb and Associates, (6) Tarzana Medical Plaza Hospital, (7) Rich Energy Fund, (8) Walton Investment Group, and (9) Battery Cycle; and d) clothes, jewelry, furniture, and other personal *271 effects. She was to receive $ 42,000 a year in alimony until her remarriage, the death of either party, or further order of the court. Petitioner estimated that the interest she received in the Northwest Industrial Center alone was worth approximately $ 600,000 and conceded that it provides her with income of $ 4,800 per month. Section 6013(d)(3) provides that, in the case of a joint return, the liability of a husband and wife shall be joint and several. However, under section 6013(e), [2] an "innocent spouse" is relieved of liability if he or she can satisfy certain statutory requirements. Specifically, section 6013(e) provides in pertinent part: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, *272 it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement. * * * (4) UNDERSTATEMENT MUST EXCEED SPECIFIED PERCENTAGE OF SPOUSE'S INCOME. -- (A) ADJUSTED GROSS INCOME OF $ 20,000 OR LESS. -- If the spouse's adjusted gross income for the preadjustment year is $ 20,000 or less, this subsection shall apply only if the liability described in paragraph (1) is greater than 10 percent of such adjusted gross income. (B) ADJUSTED GROSS INCOME OF MORE THAN $ 20,000. -- If the spouse's adjusted gross income for the preadjustment year is more than $ 20,000, subparagraph (A) shall be applied by substituting "25 percent" for "10 percent". (C) PREADJUSTMENT YEAR. -- For purposes of this paragraph, the term "preadjustment year" means the most recent taxable year of the spouse ending before the date the deficiency notice is mailed. Petitioner bears the burden of establishing that each of the *273 requirements of section 6013(e) has been satisfied. . The requirements of section 6013(e) are conjunctive. Therefore, a failure to meet any of the requirements will prevent a spouse from qualifying for relief. . Respondent conceded that the 1981 joint Federal income tax return contained a substantial understatement of tax; that the understatement of tax is attributable to a deduction for which there is no basis in fact or law; that the deduction giving rise to the substantial understatement is attributable to Dr. Kogut; and that such understatement exceeded 25 percent of petitioner's preadjustment year income. As a result, petitioner must prove each of the remaining requirements of section 6013(e) in order to be afforded innocent spouse relief. *274 Id.
Section 6013(e)(1)(C) requires petitioner to show that she did not know, and had no reason to know, of the substantial understatement when she signed her 1981 return. Generally, this Court and several Courts of Appeals have held that the knowledge contemplated by section 6013(e) is knowledge of the transaction itself, not necessarily knowledge of the tax consequences of a transaction. ; , affd. . However, the Court of Appeals for the Ninth Circuit, to which an appeal would lie in this case, has held in a case involving grossly erroneous deductions that a spouse has "reason to know" of a substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained a substantial understatement. , revg. an Oral Opinion of this Court. We are bound to follow the Ninth Circuit's opinion. , affd. *275 . The Ninth Circuit outlined the following factors to be considered when deciding whether the alleged innocent spouse had "reason to know" of the substantial understatement: (a) The spouse's level of education; (b) the spouse's involvement in the family's business and financial affairs; (c) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (d) the culpable spouse's evasiveness and deceit concerning the couple's finances. . In applying these factors, we note that petitioner received her bachelor of arts degree in economics and psychology from Hunter College. She was not only responsible for paying all family expenses from their joint checking account, but also worked for some time with the finances applicable to her husband's medical practice. Petitioner was a sophisticated yet cautious investor. In 1979, she joined her husband in investing in the Battery Cycle tax shelter. Before she agreed to make this investment, however, petitioner consulted counsel who advised *276 against it. She chose to disregard counsel's advice as to that tax shelter. She also knew that tax shelter investments had little chance of being financially successful, but were made for the purpose of obtaining tax savings. In a March 18, 1982, letter, with copy to petitioner, Alvin Friedkin, a Certified Public Accountant acting on behalf of petitioner in the divorce action, wrote to petitioner's divorce lawyer, George Goffin, stating among other things that "a thorough analysis will have to be made of taxable income, tax shelter losses and other income tax implications to determine before tax amounts necessary [for support]." (Emphasis added.) On June 11, 1982, the accountant who prepared the 1981 Federal income tax return gave petitioner a copy of the return, and she was waiting for her attorney, Mr. Albert Berg, to return from vacation to review the return. The Schedule C for the return showed a business name of "S. KOGUT RESEARCH & DEVELOPMENT", with a business address at petitioners' home and listed "CONTRACTED RESEARCH AND DEVELOPMENT" of $ 75,000 which resulted in a $ 75,000 loss. Petitioner knew that they were getting a substantial refund, which had to be due in *277 part to this loss. In her July 5, 1982, letter to Mr. Goffin explaining why the return was filed late, petitioner stated that Mr. Berg "was not that familiar with the tax shelter but of course looked over the returns". Mr. Berg stated at trial that he would have characterized the $ 75,000 Schedule C item as a tax shelter and that he would have told petitioner that this was a tax shelter. After her conversation with Mr. Berg, petitioner signed the 1981 return. When asked about the Schedule C investment at trial, petitioner stated: "I thought it might be something medical." Inasmuch as petitioner knew her husband was an internist, and not a medical researcher, and knew what her husband did at the home address, her comment at best was disingenuous. Even though Dr. Kogut independently made the Electric Auto investment, petitioner was well aware of the types of investments she and her husband made over the years. On this record, we are satisfied that petitioner was not only aware of the transaction itself, but also of the tax consequences attendant to this type of investment. Because petitioner knew, or should have known, of the Electric Auto deduction, the requirements of section *278 6013(e)(1)(C) have not been satisfied. Finally, section 6013(e)(1)(D) provides that it must be inequitable to hold petitioner liable in light of all the facts and circumstances. Petitioner and Dr. Kogut were married for 37 years during which time considerable assets were accumulated. While they were married, petitioner and Dr. Kogut received a reduced tax liability by filing a joint return for 1981, as well as other years. This reduction in reported tax liability, coupled with the claims of the erroneous tax shelter understatements of tax, made more money available for the equal division of property between petitioner and Dr. Kogut. See . At trial, petitioner claimed she did not receive the benefit of the 1981 refund check because her husband deposited it into his account at Shearson. We did not find petitioner to be a credible witness. We are not obliged to accept petitioner's self-serving testimony as gospel. See . Instead, we believe the statement made shortly after the marital settlement in petitioner's 1983 letter to the accountant who prepared *279 the 1981 return. In that 1983 letter, petitioner refers to the refund check and states that "this money (less interest) was part of the settlement but nevertheless I would like all the available information for the investment for these [1981 and 1982] two years". As a result of petitioner's divorce from Dr. Kogut in 1982, she received alimony in the amount of $ 42,000 per year. Petitioner also received one-half of all community property. This included cash of $ 128,806, a note secured by a deed of trust with a fair market value of $ 247,000, and one-half of their total interest in nine different ventures. The value of the interest received by petitioner in just one partnership, the Northwest Industrial Center, was $ 600,000 and provides her with approximately $ 4,800 of income per month. Petitioner proffered no other evidence as to the total value of the property received pursuant to her divorce. See . We find that the value of such property was substantial. To allow petitioner to receive this property from her former spouse, and at the same time escape joint and several liability, would not be equitable. We note *280 that she has paid one-half of the deficiency in income tax for 1981. In light of all the facts and circumstances in this case, we do not deem it inequitable to hold petitioner liable for the 1981 deficiency. Because petitioner has not sustained her burden of proof under Rule 142(a), we hold that petitioner's claim for relief under section 6013(e) is rejected. In this case petitioner in her Stipulation of Facts agreed that her claim as an innocent spouse with respect to the Rich Energy loss for 1981 shall be governed by the final decision of her identical claim for 1980 in docket No. 31947-84. After that stipulation was filed, petitioner represented by the same counsel filed a Stipulation of Agreed Issues in docket No. 31947-84 which included the stipulations that "if the Court rejects the innocent spouse claim in docket No. 8629-86 [this case], petitioner will concede the issue in the instant case [docket No. 31947-84] and agree that the correct loss for the Rich Energy Fund partnership in 1980 is $ 72,097.00 * * * and agree the correct deficiency for the 1980 taxable year is $ 29,517.00." Because we have rejected the innocent spouse claim in this case, petitioner will concede *281 the innocent spouse issue in docket No. 31947-84, and the Court will be able to enter a decision in the agreed amount. Because this case will be governed by the final decision in docket No. 31947-84, which will be the agreed amount, and which will be based upon a concession of the innocent spouse issue with respect to Rich Energy, it necessarily follows that she concedes the innocent spouse issue with respect to the Rich Energy loss for 1981. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the underpayment due to negligence of $ 53,627. ↩
1. The parties so stipulated. At the calendar call, petitioners' original attorney stated that all the other issues including sec. 6651(a)(1) and maximum tax have been stipulated by the parties. Petitioner Kathleen Kogut did not raise the sec. 6651(a)(1) issue in her brief, and we deem it conceded.↩
2. As amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801, applicable to all pending cases.↩